■ RONA L. HELLER, Respondent, v FAMILY CIRCLE, INC., et al., Appellants, et al., Defendants. — In an action to recover damages pursuant to section 51 of the Civil Rights Law, defendants the Family Circle, Inc., the New York Times Media Company, Inc., and Dodd, Mead & Company, Inc., appeal from an order of the Supreme Court, Suffolk County (D'Amaro, J.), dated March 23, 1981, which denied their consolidated motions for summary judgment. Order reversed, on the law, with one bill of $50 costs and disbursements payable jointly to appellants appearing separately and filing separate briefs, appellants' motions for summary judgment granted, and the complaint is dismissed as to them. In 1970, defendant Dodd, Mead & Company, Inc. (Dodd Mead), published a book entitled "Your Baby's Sex: Now You Can Choose", which had been coauthored by defendants David M. Rorvik and Landrum B. Shettles, M.D. The subject of the book was a technique developed by Shettles to be used by prospective parents seeking to increase the probability of their giving birth to a child of a particular sex. After reading the book, using the described technique, and realizing her hope of giving birth to a girl, plaintiff wrote defendant Shettles an unsolicited, laudatory letter. In April, 1974, Dodd Mead agreed with Rorvik and Shettles that a second and revised edition of the book would be published. It was planned that this second edition, which was to be titled "Choose Your Baby's Sex", would have included in its first chapter reproductions of a number of laudatory letters received from readers of the first edition. Prior to publication of the second edition, defendant Family Circle, Inc. (*Family Circle*), paid $2,500 to Dodd Mead in return for authorization to "include material from" the second edition in the September, 1976 issue of the magazine *Family Circle*. In that issue, *Family Circle* published an article entitled "Now You Can Choose the Sex of Your Next Child", written by Rorvik and Shettles. The article was introduced by an abbreviated and italicized version of plaintiff's letter, in which her name and the name of the town in which she resided appear. The article covered most of three magazine pages and contained a detailed discussion of the prenatal sex selection technique developed by Shettles. It was listed in the magazine's table of contents as one of six articles on "Health/Beauty". The first sentence of the article made reference to Rorvik and Shettle's "first book", the title of which was stated in a footnote. The footnote also stated that "Dr. Shettles' earlier work was reported in *Family Circle* ('Boy or Girl? Now You can Choose') in August, 1968." The following statement appeared in small boldface print at the bottom of the first page of the article: "Adapted from 'Choose Your Baby's Sex' by David M. Rorvik and Landrum B. Shettles, M.D. Copyright 1970. By David M. Rorvik and Landrum B. Shettles, M.D. Reprinted by Permission of Dodd, Mead & Company, Inc." This was the only reference in the article to the second revised edition of the book, which was eventually published in February, 1977. The foregoing facts are undisputed. After hearing of the publication of her letter in the magazine article, plaintiff commenced this action, seeking damages under section 51 of the Civil Rights Law on the ground that defendants had used her name without her consent "for advertising purposes or for the purposes of trade". In addition to those defendants whose identities have already been indicated, plaintiff also named as a defendant the New York Times Media Company, Inc., which was alleged to be one of the owners and publishers of *Family Circle* magazine. After plaintiff had completed discovery and filed a note of issue and certificate of readiness for trial, the media defendants moved

for summary judgment dismissing the complaint as to them. Special Term denied their consolidated motions. We now reverse the order of Special Term and grant the motions for summary judgment of the media defendants. Section 51 of the Civil Rights Law provides, in pertinent part: "Any person whose name, portrait or picture is used within this state *for advertising purposes or for the purposes of trade* without the written consent first obtained as above provided may maintain an equitable action in the supreme court of this state against the person, firm or corporation so using his name, portrait or picture, to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use and if the defendant shall have knowingly used such person's name, portrait or picture in such manner as is forbidden or declared to be unlawful by section fifty of this article, the jury, in its discretion, may award exemplary damages." However, with respect to section 51 of the Civil Rights Law: "The law is settled * * * that 'A picture illustrating an article on a matter of public interest is not considered used for the purpose of trade or advertising within the prohibition of the statute * * * unless it has no real relationship to the article * * * or unless the article is an advertisement in disguise'. (*Dallesandro* v. *Holt & Co.*, 4 A D 2d 470, 471, app. dsmd. 7 N Y. 2d 735; see, also, *Pagan* v. *New York Herald Tribune*, 32 A D 2d 341, affd. 26 N Y 2d 941; *Oma* v. *Hillman Periodicals*, 281 App. Div. 240; *Thompson* v. *Close-Up*, 277 App. Div. 848.)" (*Murray v New York Mag. Co.*, 27 NY2d 406, 408-409.) These same principles apply where the complaint alleges misuse of plaintiff's name, rather than his photograph (see *Oma v Hillman Periodicals*, 281 App Div 240). Plaintiff does not dispute the media defendants' contentions that the article in question is "an article on a matter of public interest" and that the use of plaintiff's name bears a "real relationship" to the article (see *Howard v Des Moines Register & Tribune Co.*, 283 NW2d 289, 303 [Iowa], cert den 445 US 904). Instead, in plaintiff's view, the sole question presented to this court is whether her claim that the article is an "advertisement in disguise" presents triable issues of fact, so that the merits of her complaint may not be properly determined on a motion for summary judgment. On the other hand, the media defendants' first line of defense is a request that this court hold that the "advertisement in disguise" theory has no continuing validity in New York, so that judgment is required in their favor even if there is a triable issue of fact concerning whether the article is an "advertisement in disguise". The media defendants' arguments for judicial disapproval of the theory that an article that is on a matter of public interest and uses a person's name in a manner that bears a real relationship to the article may still be actionable under sections 50 and 51 of the Civil Rights Law merely because it is an "advertisement in disguise", are not without some force. Among other things, they contend, without contradiction, that, according to the reported decisions, the "advertisement in disguise" theory has never been recognized in New York to the extent that a judgment has been awarded under that theory. They also contend that the courts have developed virtually no standards for distinguishing "advertisements in disguise" from articles that are not actionable under the Civil Rights Law. The consequent risk is asserted to be that those responsible for publishing a newsworthy article about a new invention or product which mentions an individual's name for a legitimate purpose related to the article, but without written consent, face the possibility of not only being sued under the Civil Rights Law, but also being unable to obtain summary disposition of unfounded litigation. The media defendants contend that recognition of this risk could result in an unwarranted interference with the free flow of newsworthy information. However, since the Court of Appeals has stated fairly recently that "[t]he law is settled" that an article may be

actionable if it is an "advertisement in disguise" (*Murray v New York Mag. Co.,* 27 NY2d 406, 408-409, *supra*), it is not our place to declare the demise of that theory. This is particularly so since, in any event, the media defendants have established that plaintiff's claim that the article in question is an "advertisement in disguise" raises no triable issues of fact, when the facts of this case are compared with those of other cases where defendants' motions for summary judgment or dismissal for failure to state a cause of action have been granted despite the courts' recognition of that theory. Although plaintiff has completed discovery, her claim that the article in question is an "advertisement in disguise" is based on nothing more than the contents of the article. But the article, on its face, is no more an "advertisement in disguise" than were the articles in *Pagan v New York Herald Tribune* (32 AD2d 341, affd 26 NY2d 941), *La Forge v Fairchild Pub.* (23 AD2d 636), or *Dallesandro v Holt & Co.* (4 AD2d 470, app dsmd 7 NY2d 735), where accelerated judgment was granted to defendants despite the courts' references to the "advertisement in disguise" theory (see, also, *Murray v New York Mag. Co.,* 27 NY2d 406, *supra; Lopez v Triangle Communications,* 70 AD2d 359). Moreover, it is undisputed that the article in question was published six years after publication of the first edition and about six months prior to publication of the second edition, that *Family Circle* had no financial interest in the book, that *Family Circle* paid Dodd Mead, an alleged advertiser, for the right to use the article, and that Dodd Mead paid *Family Circle* nothing despite the fact that an advertisement that was the same length as the article would have cost $105,000. We note that even if the article might have had an incidental promotional effect upon the sale of the book, that alone would not give rise to liability under the Civil Rights Law (see *Murray v New York Mag. Co.,* 27 NY2d 406, 409, *supra; Oma v Hillman Periodicals,* 281 App Div 240, 242-245, *supra*). For these reasons, the media defendants are entitled to summary judgment dismissing the complaint as against them. Margett, J. P., O'Connor, Weinstein and Thompson, JJ., concur.